# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NORTH DAKOTA
# SOUTHWESTERN DIVISION

| | |
|---|---|
| Nicholas Dodge Bruesch, ) | |
| ) | |
| Plaintiff, ) | **ORDER** |
| ) | |
| vs. ) | |
| ) | Case No. 1:12-cv-083 |
| Todd Flanagan, Sean Conway, Brandon ) | |
| Gumke, Jean Sullivan, and Nathan ) | |
| Erickson, ) | |
| ) | |
| Defendants. ) | |

Before the court is a Request to Order Defendants to Produce Discovery filed by the plaintiff, Nicholas Dodge Bruesch ("Bruesch"), on June 20, 2013. Also before the court is a Motion to Strike filed by defendants on July 16, 2013. For the reasons set forth below, Bruesch's motion is denied and defendants' motion is granted.

## I.  BACKGROUND

Bruesch was incarcerated at the North Dakota State Penitentiary ("NDSP") at the time he initiated this action. He was transferred to the James River Correctional Center ("JRCC") on April 20, 2013.

On March 26, 2013, Bruesch filed what the court construed as a Motion for Release of Documents in which he asserted, amongst other things, that NDSP staff had denied him access to his legal materials. On April 8, 2013, defendants filed a response in opposition to Bruesch's motion. They maintained that the restrictions on plaintiff's ability to access legals materials were a measured, justified response to serious security issues.

On April 10, 2013, Bruesch filed a document captioned "Affidavit" wherein he again asserted that he had been denied access legal materials. On April 16, 2013, he filed what the court construed

1

as a Second Motion for Release of Documents in which he asserted that JRCC staff was continuing to deny him access to his legal materials.

On April 23, 2013, defendants filed a supplement to their response in opposition to Bruesch's first Motion for Release of Documents, advising:

> In his documents, Bruesch explains he was sent to the James Rivers Correctional Center (JRCC) on April 2, 2013 and that when the North Dakota State Penitentiary (NDSP) sent his property to JRCC it did not send all of his legal work, legal mail, and legal letters. Bruesch further asserts the JRCC warden told Bruesch his legal work will not be given to him when it is shipped from the NDSP.
> The undersigned counsel contacted staff at the NDSP and the JRCC to determine the facts regarding this matter. It has been reported to the undersigned counsel that:
> Bruesch was transferred to the JRCC on April 2, 2013. As part of his transfer, Bruesch's property was inventoried by NDSP staff. Some, but not all, of Bruesch's property was transferred to JRCC. Bruesch's property not transferred to JRCC was sent to the NDSP property officer. The NDSP property officer has located Bruesch's legal documents and will send them to the JRCC with the Tuesday, April 23, 2013 transport.
> Due to sanctions for his behavior, Bruesch has received some, but not all, of his property sent to the JRCC. Based on his behavior at this time, Bruesch will receive his legal work when it arrives at the JRCC.

(Docket No. 69) (internal citations omitted).

Taking defendants statements at face value and believing that Bruesch would soon be reunited with his legal materials, the court deemed his Motions for Production of Documents moot.

On June 20, 2013, Bruesch filed a motion to compel production of the following from defendants:

1. Investigative Findings on Todd Flanagan regarding the May 30th, 2012 Incident of this case.

2. Investigation findings on Sean Conway regarding the May 30th, 2012 incident of this case.

3. Any investigation and/or misconduct reports on Todd Flanagan at the [North Dakota Department of Corrections and Rehabilitation] NDDOCR.

2

4. Any investigations and/or misconduct reports on Sean Conway at the NDDOCR.

5. Policy and Procedures of the NDDOCR regarding the security cameras in the administration segregation unit.

6. Plaintiff Nicholas Bruesch's file at the NDDOCR.

(Docket No. 83) (errors in original). Presumably in anticipation that defendants would object to the timeliness of his motion, he first asserted that institutional restrictions on his ability to access legal materials had prevented him from filing his motion earlier. Next, he complained about defendants objections to his interrogatories and requests for document production. Finally, he accused defense counsel of misconduct, asserting:

> When plaintiff was moved to JRCC-SAU unit all of his sanction were put on hold. The unit team agreed to allow my legal work and legal access - law library and law librarian visits. On April 23rd, 2013, counsel for defendants had filed a memorandum in opposition to release documents were upon counsel had admitted to contacted case manager Lyle Mee here at JRCC-SAU Ever sine the April 23rd date SAU unit staff have been violating my legal access off and on.
>
> No matter what was said by defendants counsel to SAU case manager. The fact counsel even contacted them to discuss whether or not plaintiff receives his legal access should be misconduct on itself. A complaint on this is in the works.

(Docket No. 83) (errors in original).

On July 1, 2013, defendants filed a response to plaintiff's motion to compel. First, they asserted that plaintiff's motion should be dismissed on the grounds that it is untimely. Second, they claimed to have already provided Bruesch with all materials in their possession regarding the May 30, 2012, incident. Third, they objected to Bruesch's demands for production of misconduct reports, the NDDOCR's policy regarding security cameras in the administrative segregation unit, and plaintiff's NDDOCR file on the grounds they were overbroad, unlikely to lead to discovery of admissible evidence, and otherwise called for the disclosure of confidential information. Additionally, with respect to plaintiff's demands regarding the NDDOCR's security camera policy, they objected on

3

grounds that such disclosures would compromise institutional security.

On July 15, 2013, Bruesch filed a reply in support of his motion to compel. In addition to dismissing plaintiff's assertions regarding the overbreadth and irrelevance of his discovery demands, he again accused defense counsel of misconduct, asserting:

> On April 23rd, 2013 Defendants filed a supplement in support of opposition to motion to release documents. In this supplement Counsel for Defendants admits to contacting case manager Lyle Mee at JRCC SAU Unit. Since then I have not had proper access to legal materials and/or law library access. A complaint on this is before the Court.
> Counsel for Defendants in this case is out of line for contacted case manager and Lyle Mee and having restrictions placed on legal access. Case No. 1:12-cv-083 has nothing to do with officials at this prison.

(Docket No. 88).[1]

On July 16, 2013, defendants filed a motion to strike plaintiff's reply insofar as it alleged misconduct by defense counsel. In the alternative, defendants requested leave to file a surreply to more fully respond to Bruesch's allegations of misconduct.

## II. DISCUSSION

### A. Discovery Requests

#### 1. Investigative Findings Regarding the Incident Giving Rise to Bruesch's Claims of Excessive Force

Bruesch has alleged in his second amended complaint that he was assaulted by Defendants Flanagan, Conway, and Gumke while being escorted from the Administrative Segregation office to his cell on the morning of May 30, 2012. In the instant motion he asks the court to issue an order compelling defendants to produce Flanagan and Conway's written accounts of this incident. In

---

[1] Bruesch's purported difficulties in accessing his legal materials have had little apparent effect on his ability to access this court. Counting the case at bar, he now has initiated three separate civil rights actions in this court against NDSP and JRCC staff. See Bruesch v. Netolicky, et. al., Case No. 3:13-cv-050 and Bruesch v. Schmalenberger, Case No. 1:13-cv-077.

4

response, defendants insist that they have already produced discoverable, responsive documents to Bruesch's discovery requests. Specifically, they aver:

> In a request for production of documents, Bruesch requested Defendants produce "[a]ll written statements, originals or copies, identifiable as reports about the incident on May 30th, 2012. Employees and/or witnesses." Defendants objected to the extent the request sought the identity of a confidential informant. They then gave the following answer:
>> Without waiving this objection, <u>see</u> Exhibits 1-12 attached to the Affidavit of Denise Senger, provided with Defendant's Motion for Summary Judgment. The following documents have not been provided for the identified reasons: Hearing Record regarding Nicholas Bruesch (undated; relating to 5/30/12 incident) not provided for security reasons; Memorandum of Jodi Molenda, LAC regarding Nicholas Bruesch (May 30, 2012) not provided because it is confidential under N.D.C.C. § 12-47-36.
>
> Flanagan gave the same answer to a duplicative discovery request.
>
> The request for production does not specifically request copies of "Investigation Findings" on Flanagan and Conway "regarding the May 30th, 2012 incident of this case." However, Defendants' response addressed all of the reports regarding the May 30, 2012 incident. Moreover, in other discovery responses, Defendants specifically informed Bruesch that Flanagan and Conway were not disciplined for their involvement in the May 30, 2012 incident
>
> Significantly, Bruesch is not asserting Defendants improperly withheld the two documents identified in Defendants' answer, which have nothing to do with "Investigation Findings" on Flanagan and Conway. Bruesch is requesting the Court order Defendants to produce "Investigation Findings" on Flanagan and Conway "regarding the May 30th, 2012 incident of this case." But as repeatedly explained to Bruesch, Defendants have produced the reports regarding the May 30, 2012, which would necessarily include findings regarding Flanagan and Conway, if there were any.

(Docket No. 86) (internal citations omitted).

The record reflects that defendants have provided Bruesch with: (1) affidavits wherein Flanagan, Conway, Gumke, Marsh, and Senger attest to their account of events that occurred on May 30, 2012; (2) copies of disciplinary hearing reports, incident reports, AS reports, and investigative reports that were generated in the wake of the May 30, 2012, incident; (3) a confidential informants account of what occurred on May 30, 2012; (4) copies of the forms used by staff to advise Bruesch of his rights along with the infractions with which he had been charged as a result of his conduct on

5

May 30, 2012; (5) memorandums from Conway and Eric Gustafson regarding the May 30, 2012, incident; and (6) a copy of the DOCR's policy regarding the use of force. (Docket Nos. 57-1 through 57-19). The court has reviewed this material and finds that it is responsive to Bruesch's discovery demands. Bruesch's motion insofar as it pertains to the disclosure of investigative materials is therefore denied.

### 2. Misconduct Reports regarding Defendants Todd Flanagan and Sean Conway

Bruesch seeks production of any investigation and/or misconduct reports pertaining to Flanagan and Conway. Defendants object on the grounds that this request is overbroad and not calculated to lead to the discovery of information relevant to the matter at issue. They further aver that the release of Flanagan's and Conway's personnel records would create security issues.

Having reviewed the parties submissions, the court concludes Bruesch's request for misconduct reports is overbroad and not otherwise geared to the discovery of admissible evidence regarding Flanagan's and Conway's alleged excessive use of force on May 30, 2012. Bruesch did not limit his request to any specific time frame or type of misconduct allegation. Thus, it arguably encompasses documents relating to investigations that may have occurred years ago, investigations involving personnel matters unrelated to the treatment of inmates, investigations of unrelated to the alleged conduct at issue in this case, and investigations where the allegations misconduct proved to be spurious.

Bruesch's request also raises valid security concerns. As defendants pointed out in their response to Bruesch's request, investigatory reports may include sensitive information about the staff and other inmates, including confidential informants. And here, Bruesch has failed to make a sufficient showing for how this information would plausibly "move the needle" in terms of creating

a triable issue of fact in light of the overwhelming weight of the evidence proffered by the defendants. See, e.g., Regan-Touhy v. Walgreen Co., 526 F.3d 641, 648-49 (10th Cir. 2008) (explaining that although personnel files are not "categorically out-of-bounds," they "often contain sensitive personal information" and the requirement that the material sought in discovery be "relevant" should be firmly applied); Sidari v. Orleans County, 174 F.R.D. 275, 289 (W.D.N.Y. 1996) (finding production of personnel files of county sheriff's office employees was not warranted absent articulation of a specific need for the information). As a consequence the court is not inclined to grant this request.

### 3. NDDOCR Policy Regarding Security Cameras in Administrative Segregation Units

Bruesch apparently served defendants with the following discovery request:

> INTERROGATORY NO. 4: Identify and attach all documents relating to the placement of security cameras in Admin. Segregation unit at North Dakota Department of Corrections.

(Docket No. 65). Defendants objected to the request for security reasons. (Id.).

In the motion now before the court Bruesch asks the court to order defendants to produce NDDOCR policy regarding security cameras in AS units. Defendants renew their objection, asserting:

> The location of the security cameras in the AS Unit is obvious; anyone can see the housing that contains the security cameras. The location of the security cameras is not the security concern. DOCR's placement documents of its security cameras contain much more information than just where the security cameras are located. The documents are part of the security prints for the entire infrastructure. For example, any camera location on a print also includes many other diagrams of floor plans and security devices. The documents are highly protected by DOCR for security reasons.

(Docket No. 86).

It is not readily apparent at this point why Bruesch wants copies of the NDDOCR's policy

7

regarding security cameras.[2] In any event, the court concludes that defendants objections are valid.

### 4. Bruesch's NDDOCR File

According to defendants, Bruesch served them with a request for production of his NDDOCR file. They objected on the grounds that the request was overly broad, unduly burdensome, and unlikely to lead to the discovery of admissible information. They did, however, invite him to make a more narrow and specific request for documents.

Bruesch apparently declined defendants invitation and now asks this court to order defendants to produce his entire NDDOCR file. Defendants respond by renewing their objections to his request. In so doing they stress that Bruesch's file contains material in date back to October 2008.[3] They also advise that inmate files typically contain: case histories (admissions, classification, movement/transfer, case management, programming, grievances, kites, letters, incident reports, disciplinary information, criminal investigation, parole, victims, etc.); visitation records (correspondence, applications, denials); property inventories (intake information, inventories, deleted property, outgoing property, property package disposition, cell check/pulled items, correspondence); treatment records (assessment, programming, correspondence, psychological); and legal records (admissions, financial obligation, criminal judgment, detainers and warrants, discharge information, sentence calculation, community violations, parole board, sentencing report).

Bruesch has provided the court with little in the way of explanation as to why he needs access

---

[2] On May 20, 2013, Bruesch filed a motion to compel production of any security camera footage of the incident giving rise to this action. Defendants filed a response to the motion on May 21, 2013, in which they questioned whether the incident at issue was ever recorded and further averred that, if by chance the incident had been captured by a security camera, it has been taped over. They also advised that security camera footage is typically disposed of after seven days unless someone burns it to a disc and that there was no record of any footage from May 20, 2012, being burned to a disc. Consequently, on June 3, 2013, the court issued an order denying Bruesch's motion to compel.

[3] According to defendants, plaintiff was twice incarcerated in state facilities. The first time was from October 2008 through December 2009. The second time is October 2010 to the present.

to his entire file. Absent any such explanation, the court finds that defendants' objection was proper.

B. **Motion to Strike**

As previously noted, Bruesch takes issue with the fact that defense counsel contacted NDSP and JRCC staff in April when investigating Bruesch's claim that he was unable to access his legal materials.

The court finds Bruesch's charges of misconduct specious. It was neither improper nor unethical for defense counsel to contact NDSP and JRCC staff to respond to Bruesch's assertions regarding his inability to access his legal materials. In fact, all indications are that Bruesch benefitted by counsel's action as it appears to have expedited his reunion with his legal materials. As a consequence the court shall disregard Bruesch's claim of misconduct.

III. **CONCLUSION**

Bruesch's Request to Order Defendants to Produce Discovery (Docket No. 83) is **DENIED**. Defendants' Motion to Strike (Docket No. 89) is **GRANTED** insofar as it asks the court to disregard Bruesch's claims of misconduct. Defendants' request for leave to file a surreply to Bruesch's motion (Docket No. 91) is deemed **MOOT**.

**IT IS SO ORDERED.**

Dated this 11th day of March, 2014.

*/s/ Charles S. Miller, Jr.*
Charles S. Miller, Jr., Magistrate Judge
United States District Court